**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Mallory Adams, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Sheriff Jeff Bullard of | ) | |
| Jefferson County, Illinois, | ) | |
| Telecommunication Supervisor | ) | Case Number: 3:25-1589 |
| Jason McIlrath of | ) | |
| Jefferson County, Illinois, | ) | |
| Deputy Jordan Spetter, | ) | |
| of Jefferson County, Illinois, | ) | |
| Chief Deputy Blaine Uhls of | ) | |
| Jefferson County, Illinois, | ) | |
| and | ) | |
| Jefferson County, Illinois, | ) | |
| Defendants. | ) | |

**COUNT I**
**SEXUAL HARRASSMENT**

THE PLAINTIFF, MALLORY ADAMS, for her Complaint against the above named Defendant's states as follows:

1. Plaintiff Mallory Adams is a citizen of the United States District Court for the Southern District of Illinois and is a resident of Mt. Vernon, Jefferson County, Illinois.

2. The Defendant's, Sheriff Bullard who is Sheriff of Jefferson County, Illinois, Jason McIlrath, who is a Telecommunication Supervisor with Jefferson County, Illinois, Deputy Jordan Spetter, who is a Deputy with Jefferson County, Illinois and Blaine Uhls who is a Chief Deputy with Jefferson County, Illinois and Jefferson County, Illinois, and are all citizens of the United States District Court for the Southern District of Illinois.

3. Plaintiff, Mallory Adams, became employed with the Jefferson County Sheriff's Department in October of 2010 as a dispatcher.

4.     Plaintiff was assigned to the dispatch center in the Jefferson County Jail in Mt. Vernon, Illinois.

5.     The dispatch center is a small space that will accommodate two dispatchers at any time.

6.     Plaintiff was assigned the night shift which would begin at 9:00 p.m. and end at 7:00 a.m.  During the time from 9:00 p.m to 3:00 a.m., a second dispatcher would be assigned to assist.

7.     On December 17, 2022, Plaintiff was at her residence in Mt. Vernon when Deputy Jordan Spetter, who was on duty, appeared at her home, entered and proceeded to rub Plaintiff's shoulders and breasts without Plaintiff's consent.   Plaintiff told Spetter to stop, which he refused to immediately do, and when asked to leave did not do so.  A complaint was made to management by a co-worker to whom Plaintiff reported the event to.

8.     Chief Deputy Blaine Uhls was to have investigated the complaint.  Uhls then stated to Plaintiff that while he believed Plaintiff, he could not prove it happened and was not taking any action.

9.     Jason McIlrath was Plaintiff's supervisor.  He told Plaintiff that he knew Spetter was guilty and should be fired and should never be a law enforcement officer again.

10.    On September 9, 2023, Plaintiff was invited to a wedding reception that evening at the Snow Family Homestead in Mt. Vernon.

11.    Defendant, Jason McIlrath, approached Plaintiff and started dancing with her, stating to Plaintiff that he was getting a divorce.

12.    McIlrath, without warning, immediately and violently grabbed Plaintiff's buttocks pulling Plaintiff toward him while grinding his sexual organs against Plaintiff's body, causing Plaintiff to be shocked and upset. Plaintiff repeatedly struck Defendant on the arm while yelling repeatedly for Defendant to stop.

13.    Plaintiff got away and fled outside where other guests had gathered. Defendant McIlrath followed Plaintiff outside where he grabbed Plaintiff's arms violently pulling her down to the floor where she struck her head against the concrete, dazing Plaintiff.  Plaintiff feared for her life.  Another guest fell on Plaintiff.  Defendant then fled.

14.    Plaintiff immediately reported the event to a co-worker who made the complaint to Chief Deputy Uhls for her.

15.    Uhls interviewed Plaintiff and told Plaintiff that the Sheriff's Department was not going to stand for this and strong action would be taken.

16.    Uhls called Plaintiff to a meeting in his office.  Defendant McIlrath was present.  Plaintiff objected to his presence and suffered a panic attack that was made worse by Uhls stating that Defendant would have a two day suspension and no other discipline.  Plaintiff immediately voiced her objection to the inadequate discipline and fact that Defendant McIlrath would remain her direct supervisor. As Chief Deputy Defendant Blaine Uhls was responsible for the investigations and had command responsibility for the staff including Plaintiff and her direct supervisor Defendant Jason McIlrath who was the Telecommunications Supervisor for Jefferson County.  Defendant Uhls, as command officer, should not have included Defendant McIlrath in the meeting with Plaintiff.

17.    Defendants Bullard and Uhls subsequently allowed Defendant McIlrath to be alone with Plaintiff in the Dispatch Room and should reasonably have known this would cause Plaintiff to suffer panic attacks, feelings of helplessness and profound emotional distress.  Defendants Bullard and Uhls failed to adequately investigate the Plaintiff's complaints and the disciplinary actions imposed were inadequate.  Plaintiff voiced her objection to the Defendant Chief Deputy Uhls.

18.    Plaintiff told the Defendant Chief Deputy Uhls that she could not be around Defendant McIlrath and that his presence caused her to suffer panic attacks and intense emotional upset with panic attacks, feelings of helplessness, and high levels of stress.  Plaintiff requested Defendant McIlrath be reassigned.  This request was ignored by the Defendants Bullard and Uhls.

19.    Defendant Bullard was interviewed regarding the conduct by Defendant McIlrath by Sarah Boyles, freelance journalist.  Defendant Bullard admitted that Plaintiff was a victim of inappropriate conduct and he was aware that there would be emotional problems after that and this was a "shame".  The Defendant Sheriff further stated that he had to consider that Defendant McIlrath was drinking when the incident with Plaintiff occurred.

20.    A Right To Sue has been issued by the U. S. Department of Justice which Plaintiff was notified of its issuance on May 22, 2025.

-3-

. 21.   Plaintiff found her mental condition worsening with panic attacks, depression, fear of further attacks, hopelessness and feeling that the Defendant did not care about her health.  Plaintiff was forced to resign on or about October 20, 2023 due to the actions of the Defendants.

22.   Plaintiff has experienced profound mental distress, incurred medical expenses, lost wages and lost benefits with damages exceeding $2,000,000.

WHEREFORE, Plaintiff seeks judgment against Defendants Jeff Bullard, Jason McIrath, Jordan Spetter, Brian Uhls and the County of Jefferson in the amount exceeding $2,000,000.

## COUNT II
## INTENTIONAL INFLECTION OF EMOTIONAL DISTRESS

FOR Count II of her Complaint, Plaintiff re-alleges Paragraph 1 through 22 of Count I as Paragraphs 23-25 of Count II and further states that:

23.   On or about November 15, 2023, Plaintiff was at her residence in Mt. Vernon when she saw a vehicle parked in front of her home and saw inside a relative of Defendant McIlrath who the Plaintiff believed to be a relative of Defendant McIlrath who was sitting there watching her house.  This caused Plaintiff to suffer a severe panic attack.

24.   Defendant's should have reasonably known that their actions described above would cause Plaintiff to suffer profound and persistent emotional distress which prevented the Plaintiff from performing her work.

25.   As a directe proximate result, Plaintiff had to resign her position due to the profoundly distressing and untenable work environment.  Plaintiff could no longer safely do her job in that environment.  Plaintiff had to seek medical care.  Plaintiff suffered costs for care, lost wages and benefits, and continued to suffer ongoing profound emotional distress with damages exceeding $2,000.000.

WHEREFORE, Plaintiff seeks Judgment against the Defendants Jeff Bullard, Jason McIlrath, Jordan Spetter, Blaine Uhls and Jefferson County in an amount exceeding $2,000,000.

## COUNT THREE
. ## INTENTIONAL TORTUOUS INTERFERENCES WITH
## EMPLOYMENT RELATIONSHIPS

For Count III of her Complaint, Plaintiff re-alleges Paragraph 1 through 22 of Count I and Paragraphs 23 through 25 of Count II as Paragraph 1 through Paragraph 25 of Count III and further alleges that:

26.    Since being forced to leave her employment with Defendant Sheriff, Plaintiff has applied for a dispatcher position with multiple other law enforcement and has been denied hiring by each.

27.    Plaintiff reasonably believes that Defendant Sheriff has interfered with those positions by reporting negative, nonfactual allegations to these agencies, wrongfully interfering with Plaintiff's hiring for each.   This pattern of conduct last occurred with a non-hiring letter from a governmental agency received by Plaintiff on or about August 7, 2025.

28.    As a direct result Plaintiff has been tortuously denied further employment with resulting further emotional distress, lost wages, lost retirement and other benefits with damages exceeding $2,000,000.

WHEREFORE, PLAINTIFF seeks judgment against the Defendants Sheriff Jeff Bullard, Jason McIlrath, Brian Uhls, Jordan Spetter and the County of Jefferson County, Illinois, in the amount exceeding $2,000,000.

**PLAINTIFF REQUESTS TRIAL BY JURY**

Respectfully submitted,

Mallory Adams, Plaintiff,

By: /s/ Monroe D. McWard
    Monroe D. McWard, His Attorne

Monroe D. McWard
McWard Law Office
107 S. Washington St.
Taylorville, IL 62568
217-824-2900
mdmcward@mcwardlaw.com
Reg. No. 06190799

-5-